IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 20–cv–00186–RM–KMT

DON KEVIN WOODSON,

     Plaintiff,

v.

ARMOR CORRECTIONAL HEALTH SERVICES, INC.,
THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF EL PASO,
EL PASO COUNTY SHERIFF'S OFFICE,
SHERIFF BILL ELDER,
AMERICAN MEDICAL RESPONSE, INC.,
UCH-MHS d/b/a UNIVERSITY OF COLORADO HEALTH MEMORIAL HOSPITAL
CENTRAL,
LUCAS A. HENNINGS, M.D.,
CANDIDA R. RODIRIGUEZ, N.P.,
MARY MARSH, P.A.,
KANDEE HAMMILL, R.N.,
TRACEY L. DANIELS, PA-C,
JILL W. VESSEY, M.D.,
AMY K. CURRAN, M.D.,
JAMES C. SANDBERG, PA-C,
JONATHAN P. O'NEIL, M.D., and
ROBERT D. WEBER, M.D.,

     Defendants.

---

# ORDER

---

     Before the court is the "Unopposed Motion to Stay Discovery," filed by Defendants The

Board of County Commissioners of the County of El Paso ["BoCC"], El Paso County Sheriff's

Office ["EPSO"], and Sheriff Bill Elder ["Elder"], [collectively, the "El Paso County

Defendants"].  (["Motion"], Doc. No. 82.)  In their Motion, the El Paso County Defendants ask

that discovery in this matter be stayed, pending resolution of their previously filed motion to dismiss. (*Id.* at 1-2; *see* Doc. No. 77.)  The El Paso County Defendants state that none of the other litigants oppose the relief sought. (Mot. 1.)  For the following reason, the motion to stay is GRANTED.

## STATEMENT OF THE CASE

Plaintiff Don Kevin Woodson ["Woodson"] is a former pretrial detainee at the El Paso County Criminal Justice Center ["ECCJC"], who reportedly suffers from paranoid schizophrenia, anxiety disorder, and bipolar disorder. (["Complaint"], Doc. No. 1 at ¶¶ 43-44.)  Woodson brings this lawsuit, pursuant to 42 U.S.C. § 1983, asserting violations of his Fourteenth Amendment rights, as well as claims for professional negligence under Colorado state law. (*Id.* at ¶¶ 1, 120-204.)

According to the Complaint, on February 2, 2018, while being apprehended for arrest, Plaintiff was bitten by a police dog on his left arm, left foot, and "other parts of his body." (*Id.* at ¶¶ 45-48.)  At the time, Plaintiff was observed to be "naked" and "talking to himself." (*Id.* at ¶ 46.)  Following his arrest, Plaintiff was reportedly transported by ambulance to the Defendant UCH-MHS d/b/a University of Colorado Health Memorial Hospital Central ["Memorial Hospital"], where he was examined by Defendants Lucas A. Hennings, M.D. and Candida R. Rodriguez, R.N. (*Id.* at ¶¶ 49-50.)  The clinicians found Plaintiff to be "acting erratically and speaking incoherently." (*Id.* at ¶¶ 50-51, 53.)  Upon examination, they observed "multiple puncture wounds" on his left arm, but found no signs of "obvious infectious process." (*Id.* at ¶¶ 51-53.)  Plaintiff's left arm wounds were cleaned and irrigated, and he was given a prophylactic

antibiotic.  (*Id.* at ¶ 54.)  That same day, February 2, 2018, Plaintiff was discharged from the hospital.  (*Id.*)

Upon his discharge, from February 2, 2018, until February 11, 2018, Woodson was held as a pretrial detainee at ECCJC, a facility which is operated by the El Paso County Defendants. (*Id.* at ¶¶ 10, 12, 56-57, 127.)  While at ECCJC, Plaintiff's healthcare was "provided, overseen, and supervised" by Defendants Armor Correctional Health Services, Inc. ["ACHS"], Mary Marsh P.A., and Kandee Hammill, R.N. [collectively, the "Armor Defendants"].  (*Id.* at ¶¶ 5-6, 22, 25, 57-58.)  Woodson alleges that, throughout his initial ten-day confinement at ECCJC, the Armor Defendants "repeatedly failed" to provide him with adequate medical care.  (*Id.* at ¶ 58.)

On February 11, 2018, Plaintiff was rushed back to Memorial Hospital by Defendants American Medical Response, Inc. ["AMR"], EPSO, and Elder, reportedly due to his "altered mental status," as well as swelling in his left arm.  (*Id.* at ¶¶ 79-81.)  At the time, Plaintiff was noted to have a "scab" on his left foot, though he was "unable to verbalize how it happened." (*Id.* at ¶ 79.)  Upon his admittance to Memorial Hospital, Plaintiff was treated by Defendants Tracey L. Daniels, PA-C, Jill W. Vesey, M.D., Amy K. Curran, M.D., James C. Sandberg, PA-C, Jonathan P. O'Neil, M.D., and Robert D. Weber, M.D.  (*Id.* at ¶¶ 83-101.)  Nine days after his admission, on February 20, 2018, Plaintiff underwent a transtibial amputation of his left leg, "[d]ue to the extent of the gangrene and associated damage, including exposed bone in the left hindfoot and midfoot."  (*Id.* at ¶¶ 110-11.)  Following the amputation, Woodson remained hospitalized at Memorial Hospital until March 2, 2018.  (*Id.* at ¶ 112.)  He was then transported back to ECCJC, where he was held as a pretrial detainee, until March 27, 2018.  (*Id.*)

Plaintiff now alleges that, "[t]hroughout the aforesaid period of pre-trial detention and course of care from February 2, 2018 to February 20, 2018," Defendants all "knew" that he "was in the grip of psychological and behavioral conditions and limitations which rendered him unable to effectively or accurately self-advocate or communicate with his healthcare providers or custodial agents regarding the nature or extent of his physical injuries or symptoms." (*Id.* at ¶¶ 113-14.) Woodson claims that Defendants' "negligent, liability-producing, and unconstitutional acts and omissions" led to the surgical amputation of his left lower leg, and caused him to suffer "other physical, emotional, and psychological injuries," as well as "economic losses." (*Id.* at ¶¶ 115-119.)

Based on these allegations, on January 22, 2020, Plaintiff commenced this lawsuit. In his Complaint, Woodson asserts the following causes of action: (1) Fourteenth Amendment deliberate indifference claims against the Armor Defendants; (2) Fourteenth Amendment due process claims against the El Paso County Defendants; and (3) supplemental tort claims for negligence against all Defendants. (*Id.* at ¶¶ 120-204.) As relief, Plaintiff seeks monetary damages, only. (*Id.* at 85.)

On May 26, 2020, the El Paso County Defendants responded to Plaintiff's allegations by filing a motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. No. 77.) In their motion to dismiss, the El Paso County Defendants argue, among other things, that Woodson's § 1983 claims against them fail, as a matter of law, because each claim is "contingent upon the existence of an underlying constitutional violation by the Armor Defendants," and because Plaintiff has failed to adequately allege "an[y] underlying constitutional violation." (*Id.* at 2, 6, 9-16.) Defendant Elder also contends that he is entitled to

qualified immunity with respect to the constitutional claims asserted against him. (*Id.* at 2, 17.) In addition, the El Paso Defendants argue that Plaintiff's supplemental tort claims are barred by the statute of limitations and the Colorado Governmental Immunity Act ["CGIA"]. (*Id.* at 2, 18-19.)

Defendants Vessey and Daniels, as well as the Armor Defendants, likewise filed their own motions to dismiss, on May 8, 2020, and May 26, 2020, respectively. (Doc. Nos. 66, 78.) Defendants Vessey and Daniels bring their motion to dismiss, pursuant to Rule 12(b)(1), arguing that the court should decline to exercise supplemental jurisdiction over the claims asserted against them,[1] while the Armor Defendants seek dismissal of the Complaint, pursuant to Rule 12(b)(6), for inadequate pleading. (Doc. No. 66 at 4, 11; Doc. No. 78 at 3-13.) All three motions to dismiss are fully briefed and pending. (Doc. Nos. 79, 87, 100-01, 105-06.)

On June 3, 2020, the El Paso County Defendants filed the present Motion, asking that discovery in this matter be put on hold, until after the court's resolution of their previously filed motion to dismiss. (Mot. 3, 5.) The El Paso County Defendants argue that a discovery stay is appropriate in this case, because Defendant Elder has invoked qualified immunity as to the federal claims asserted against him. (*Id.* at 2-3.) In addition, they contend that all relevant factors weigh in favor of the imposition of a stay. (*Id.* at 4-5.)

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure do not expressly provide for a stay of proceedings. Rule 26(c), however, permits a court to "make an order which justice requires to

---

[1] Defendants Hennings, O'Neil, Sandberg, Rodriguez, and Curran have each filed a joinder to the Vesey/O'Neil motion to dismiss. (Doc. Nos. 67-69, 71, 73.)

protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense."
Fed. R. Civ. P. 26(c).  Further, "[t]he power to stay proceedings is incidental to the power
inherent in every court to control the disposition of the causes on its docket with economy of
time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248,
254-55 (1936) (citing *Kan. City S. Ry. Co. v. United States*, 282 U.S. 760, 763 (1931)).

In this District, a stay of discovery is generally disfavored.  *See, e.g.*, *Rocha v. CCF
Admin.*, No. 09-cv-01432, 2010 WL 291966, at *1 (D. Colo. Jan. 20, 2010); *Jackson v. Denver
Water Bd.*, No. 08-cv-01984, at *1 (D. Colo. Dec. 15, 2008); *Chavez v. Young Am. Ins. Co.*, No.
06-cv-02419, at *2 (D. Colo. Mar. 2, 2007).  Nevertheless, the decision whether to stay
discovery rests firmly within the sound discretion of the court.  *United Steelworkers of Am. v. Or.
Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003) (quoting *Landis*, 299 U.S. at 254).

In ruling on a motion to stay discovery, five factors are generally considered: "(1) [the]
plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice
to [the] plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4)
the interests of persons not parties to the civil litigation; and (5) the public interest."  *String
Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 02-cv-01934, 2006 WL 8949955, at *2 (D. Colo.
Mar. 30, 2006); *see United Steelworkers*, 322 F.3d at 1227.  Further, "a court may decide that in
a particular case it would be wise to stay discovery on the merits until [certain challenges] have
been resolved."  8A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND
PROCEDURE § 2040, at 198 (3d ed. 2010).  "[A] stay may be appropriate if resolution of a
preliminary motion may dispose of the entire action."  *Serv. First Permits, LLC v. Lightmaker
Vancouver (Internet) Inc.*, No. 18-cv-02089, 2019 WL 109335, at *3 (D. Colo. Jan. 4, 2019)

(quoting *Elec. Payment Sols. of Am., Inc.*, No. 14-cv-02624, 2015 WL 3940615, at *1 (D. Colo. June 25, 2015)).

## ANALYSIS

In this case, as to the first factor, there is no evidence to suggest that Plaintiff will be prejudiced by a discovery stay.  Indeed, the motion to stay is unopposed.  (*See* Mot. 1.)  The first factor, therefore, weighs in favor of the imposition of a stay.  *See Frasier v. Evans*, No. 15-cv-01759, 2015 WL 6751136, at *2 (D. Colo. Nov. 5, 2015) (finding the first factor to weigh in favor of a stay, because the plaintiff did not oppose the requested relief).

As to the second factor, the El Paso County Defendants argue that they would be unduly burdened by moving forward with discovery, particularly because Defendant Elder "would be deprived of the benefit of qualified immunity if he is forced to partake in extensive discovery before this Court rules upon qualified immunity."  (Mot. 4.)  Qualified immunity "give[s] government officials a right, not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery."  *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (alterations omitted) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  The Tenth Circuit has made clear that "qualified immunity questions should be resolved at the earliest possible stage in litigation."  *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)) (per curiam) (alterations omitted).  In addition, "discovery generally should be avoided once qualified immunity is raised," unless the plaintiff demonstrates "how [such] discovery will raise a genuine fact issue as to the defendant['s] qualified immunity claim."  *Martin v. Cty. of Santa Fe*, 626 Fed. App'x 736, 740 (10th Cir. 2015) (citing *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1387 (10th Cir. 1994)).  Here, Plaintiff has made no such

demonstration.  *See Raven v. Williams*, No. 1:19-cv-01727-WJM-SKC, 2019 WL 4954640, at *2 (D. Colo. Oct. 8, 2019) (finding the second factor weighed in favor of a stay, because the plaintiff did not address how discovery would pertain to the defendant's qualified immunity defense).

Nevertheless, an assertion of qualified immunity "is not a bar to all discovery."  *Rome v. Romero*, 225 F.R.D. 640, 643 (D. Colo. 2004).  Indeed, qualified immunity is applicable only to individual capacity claims for monetary damages; it is not a defense against official capacity claims, and it does not apply to claims asserted against governmental entities.  *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1233 n.3 (10th Cir. 2004) (citing *Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993)).  In this case, Plaintiff appears to lodge both individual and official capacity claims against Defendant Elder, in addition to his § 1983 claims against EPSO, BoCC, and the Armor Defendants.  (*See* Compl. ¶¶ 6-12, 22-27, 121, 132, 141, 150, 169, 175.)

However, there is no question that allowing limited discovery to proceed as to the official capacity claims against Defendant Elder, or as to the § 1983 claims against the other Defendants, would effectively rob Defendant Elder of his qualified immunity defense.  Indeed, in this case, it would be particularly difficult to distinguish between discovery related to claims that may be subject to qualified immunity, and those that are not.  For instance, Plaintiff's due process claims against Defendants EPSO and BoCC, which would not be subject to qualified immunity, would result in discovery of the same information that would be relevant to his due process claims against Defendant Elder, which potentially would be subject to qualified immunity.  Given that qualified immunity "is both a defense to liability and a limited 'entitlement not to stand trial or face the other burdens of litigation," such a scenario would be inappropriate.  *See Ashcroft v.*

*Iqbal*, 556 U.S. 662, 672 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Accordingly, the second factor supports the imposition of a stay. *See Chapman v. Fed. Bureau of Prisons*, No. 15-cv-00279-WYD-KLM, 2015 WL 4574863, at *3 (D. Colo. July 30, 2015) (finding the second factor weighed in favor of staying discovery, even though qualified immunity was only applicable as to some of the claims, because "it would be difficult for the parties and the Court to distinguish between discovery related to the claims that may be subject to qualified immunity and those that are not").

Looking to the remaining *String Cheese Incident* factors, the third "court convenience" factor also weighs in favor of stay. Indeed, it is certainly more convenient for the court to enter a stay until it is clear which of Plaintiff's claims, if any, will move forward. The fourth factor bears no weight, as there are no non-parties with significant, particularized interests in this case. As to the fifth factor, the general public's primary interest in this case is an efficient and just resolution. Avoiding wasteful efforts by the court and the litigants serves that purpose.

Therefore, considering the *String Cheese Incident* factors together, as well as the strong interest of resolving immunity questions before subjecting government officials to the vicissitudes of litigation, a stay of all discovery in this case is appropriate.

Accordingly, it is

**ORDERED** that the El Paso County Defendants' "Unopposed Motion to Stay Discovery" (Doc. No. 82) is **GRANTED**. Discovery in this matter is **STAYED** as to all Defendants, pending rulings on the three outstanding motions to dismiss (Doc. No. 66, 77-78.) In light of this Order, the parties' proposed Scheduling Order (Doc. No. 95) will not be entered. Instead, within ten days of a final ruling on the three motions to dismiss, if any portion of the

case remains, the parties shall file an Amended Proposed Scheduling Order, setting forth an accurate recitation of the remaining claims and proposing jointly agreed upon new deadlines.

This 17th day of July, 2020.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge